UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                      Chapter 11

TRENTON LAND HOLDINGS, LLC,                                 Case No. 10-60990-TJT

       Debtor in Possession.                            Hon. Thomas J. Tucker
_____/

## DEBTOR'S RESPONSE TO RTRR'S
## OBJECTION TO MOTION TO DISMISS CASE

**NOW COMES** Trenton Land Holdings, LLC ("Trenton"), by its counsel, and files this response to the objection filed by Riverview-Trenton Railroad Company ("RTRR") to Trenton's motion to dismiss this case ("Motion").

### RTRR Lacks Standing

RTRR asserts that it is a creditor of Trenton, and has filed a claim in the amount of $152,079.00. RTRR's alleged claim arises out of a Railway Easement Agreement ("RTRR Agreement") dated June 2, 2000. Trenton is not a party to the RTRR Agreement. Rather, the RTRR Agreement is between RTRR and DSC Ltd. ("DSC"). DSC is an "affiliate" of Trenton and was the prior owner of Trenton's real property ("Real Property"). RTRR asserts that the obligations arising out of the RTRR Agreement are covenants that run with the land, and that because Trenton now owns the Real Property, Trenton is obligated under the RTRR Agreement.

Trenton disputes RTRR's claim, and its standing in this case. Trenton was not a party to the RTRR Agreement, and any obligations arising under the RTRR Agreement are personal, and do not run with the land. As a result, Trenton has no obligations to RTRR.

If the obligations arising under the RTRR Agreement are determined to run with the land, RTRR still does not have a claim against Trenton. The RTRR Agreement requires RTRR to provide written notice (to Trenton, if the obligations run with the land) of any failure to fulfill a maintenance obligation. The breaching party then has 30 days to cure the alleged breach. Only if the breach is not cured can the

non-breaching party perform the maintenance and bill the breaching party. In this case, no prior written notice was ever provided by RTRR to Trenton. Therefore, Trenton does not have any obligations to RTRR, RTRR is not a creditor of Trenton, and RTRR lacks standing to object to the Motion.

**RTRR's Objections are Without Merit and are Asserted in Bad Faith.**

In January, 2005, RTRR, among others, filed an involuntary petition against DSC (case no. 05-42508) ("DSC Litigation"). DSC contested the petition. After the parties conducted extensive discovery, this Court held an evidentiary hearing that lasted several days. The involuntary petition was ultimately dismissed, and the dismissal was upheld after two appeals were taken by RTRR.

In its objection to this Motion, RTRR asserts (without any support) that the buildings and equipment ("Personal Property") located on the Real Property are owned by Trenton (rather than Detroit Steel Company ("Detroit Steel")), and that "cause" exists to deny the Motion and instead convert this case to a Chapter 7 case because *(i)* Trenton has failed to produce any evidence that the Personal Property is actually owned by Detroit Steel; and *(ii)* Detroit Steel is scrapping some of the Personal Property.

It is absolutely astounding that RTRR would make this assertion, especially in this Court! First, RTRR has never requested any documentation from Trenton regarding the ownership of the Personal Property. Second, if RTRR had requested such evidence, Trenton would have advised RTRR that it already has the evidence. The transfer of the Personal Property, and the documents evidencing such transfers, were not only widely discussed (and produced) in discovery during the DSC Litigation, but were mentioned by both DSC and RTRR in the numerous briefs filed in the DSC Litigation.

DSC acquired assets (including the Real and Personal Property) from McLouth in August, 1996. DSC transferred the Personal Property to Detroit Steel in May, 2000. DSC retained ownership of the Real Property, but later (in June, 2002) transferred the Real Property to Trenton. None of these transactions was hidden, and in fact the McLouth and Detroit Steel transactions were approved by the bankruptcy court overseeing the McLouth case. RTRR has known of these transactions for many years.

First, pursuant to *(i)* an order entered in the DSC Litigation on 2/25/2005 (docket 59); and *(ii)* an order entered on 2/25/2005 in adv. proc. 05-4161 (docket 44), all records of DSC were made available for review by RTRR on or about 2/24/2005.

Second, in a deposition taken by RTRR on 2/25/2005, RTRR asked Matthew Zwack (a representative of DSC) to describe the sale of assets from DSC to Detroit Steel, and the transfer of the Real Property by DSC to Trenton. See Exh. 1. Similarly, in a separate deposition taken by RTRR of Mr. Zwack on 3/17/2005, RTRR asked Mr. Zwack about the transfer of assets from DSC to Detroit Steel, the transfer of the Real Property from DSC to Trenton, and the assets owned by Trenton. See Exh. 2.

Third, trial testimony by Mr. Zwack also described the foregoing transactions. See pp. 208-209 of the transcript of the 3/08/2005 hearing, docket 97, DSC Litigation. Moreover, exhibits used in the DSC Litigation also described the transactions. See DSC Exh. 64, attached hereto (in part) as Exh. 3.

Finally, in the many pleadings filed in the DSC Litigation, reference was made by <u>both</u> DSC <u>and</u> <u>RTRR</u> of the ownership by Detroit Steel of the Personal Property, and the ownership by DSC (and then Trenton) of the Real Property. See, for example, *(i)* the trial brief filed by RTRR (docket 49, pp. 1, 3); *(ii)* the trial brief filed by DSC (docket 50, p. 3); *(iii)* the District Court appeal brief filed by RTRR (case no. 05-cv-72779, docket 16, p. 5); *(iv)* the District Court appeal brief filed by DSC (case no. 05-cv-72779, docket 20, pp. 5-6); and *(v)* the Sixth Circuit appeal brief filed by DSC (case no. 06-1813, pp. 7-8).

Trenton has also never hidden the fact that Detroit Steel owns the Personal Property. Trenton's bankruptcy schedules (docket 24) disclose the fact that Trenton owns no personal property, and that Detroit Steel owns all of the equipment and buildings on the Real Property. Trenton also discussed the DSC, Detroit Steel and McLouth transactions in its *(i)* response (docket 25) to a lift stay motion; and *(ii)* motions to extend plan deadlines (dockets 43 and 65). At no time did RTRR object to these pleadings, or ask Trenton for information about the transactions described therein.

Similarly, the assertion by RTRR that it recently learned that Detroit Steel is performing scrapping operations on the Real Property, and that such operations are somehow inappropriate, is also ludicrous.

First, as set forth above, Detroit Steel owns the Personal Property; Trenton has <u>never</u> owned it. Second, Detroit Steel has been scrapping its property since at least 2005, as attested by Mr. Zwack in the deposition taken by <u>RTRR</u> on 3/17/2005. See Exh. 2, p. 67. RTRR has known of the scrapping operations since at least 2005, as evidenced not only by Exhibit 2, but *(i)* its own trial brief (DSC Litigation, docket 49, p. 2); and *(ii)* a motion filed by RTRR on 2/16/2005 in the DSC Litigation (adv. proc. 05-4161, docket 2, para. 10-11). Detroit Steel is not a debtor, and is not prohibited from removing its own property.

As to Trenton's alleged failure to produce evidence of a lease between it and Detroit Steel, any such "failure" is immaterial and irrelevant. The first meeting of creditors occurred on 7/29/2010. Although Debtor's counsel does not recall whether RTRR verbally requested a copy of any lease at that time, RTRR <u>never</u> requested (in writing) copies of any leases, and never followed up on any alleged verbal request. Similarly, no such request was made by the U.S. Trustee, nor has the U.S. Trustee ever asserted that any such request is outstanding. More importantly, RTRR already has documentation in its possession regarding the lease. Attached as Exhibit H to RTRR's own complaint (adv. proc. 05-0416, docket 1) filed on 2/16/2005, is a Memorandum of Trenton Property Lease Agreement. The Memorandum (Exh. 4) was filed with the Wayne County Register of Deeds on 1/07/2004 and describes the lease.

RTRR has asserted that a trustee is needed to pursue Chapter 5 causes of action. As evidenced by the Affidavit of Michael Wilkinson (See Exh. 7), Trenton has not made any transfers of its property, other than security interests granted to its lenders. There are no Chapter 5 causes of action.

RTRR has also asserted that Trenton has failed to maintain insurance. If RTRR had reviewed any of the monthly operating reports filed by Trenton, RTRR would have seen that Trenton has insurance coverage through August, 2012. Trenton has provided a copy of the insurance binder (Exh. 5) to the U.S. Trustee, and would have provided a copy to RTRR, had it requested one (which it did not).

## Conclusion

RTRR is not interested in the reorganization of Trenton, or even in payment of its disputed claim. Rather, RTRR is only interested in acquiring the Real Property. RTRR owns property adjacent to the Real

Property, and has been trying for years to acquire the Real Property. See Exh. 6. Since 2000, RTRR and its affiliates have contacted various prospective purchasers of the Real Property in an effort to interfere with any proposed sale of the Real Property. RTRR and its affiliates have (successfully) interfered with attempts (initially by DSC, and then by Trenton) to sell the Real Property to the City of Trenton; GP, LLC; Severstal, N.A.; and Real Estate Interests Group, Inc. RTRR's interests in this case are as a prospective purchaser, seeking to depress the value of the Real Property. Its objection was filed in bad faith, and must be disregarded.

Dismissal is in the best interests of Trenton and its creditors. Trenton has reached a deal with its first priority secured creditor, the Wayne County Treasurer, which, *inter alia*, provides for continued environmental services. The Treasurer concurs with the relief sought by Trenton, as have all of Trenton's other secured creditors (as evidenced by their lack of objection). Trenton has no Chapter 5 causes of action, has no assets other than the Real Property, and has not allowed anyone to use or transfer its property. Far from taking the assets of Trenton, Detroit Steel has assisted Trenton in its efforts to maintain the environmental condition of the Real Property. Any trustee appointed would have to maintain the Real Property (and its environmental issues), but would have no resources to do so. Abandonment would not resolve the environmental issues, nor would it preserve any equity which may be available to Trenton's secured creditors (other than the Treasurer). It is also unlikely that any sale of the Real Property by a trustee would generate enough money to provide a distribution to unsecured creditors.

**SILVERMAN & MORRIS, P.L.L.C.**

By:     /s/ Karin F. Avery
    Geoffrey L. Silverman (P34011)
    Karin F. Avery (P45364)
Attorneys for Debtor in Possession
7115 Orchard Lake Road, Suite 500
West Bloomfield, Michigan 48322
avery@silvermanmorris.com

Dated: October 6, 2011     Tel: (248) 539-1330; Fax (248) 539-1355